**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

em
USDC- GREENBELT
'26 JAN 9 PM3:14

UNITED STATES OF AMERICA
*ex rel*. [SEALED],

Plaintiff,

– Against –

[SEALED],

Defendant.

No.: LKG 26 CV 00077

**FALSE CLAIMS ACT COMPLAINT**
and
**JURY DEMAND**

**[TO BE FILED UNDER SEAL]**

**FILED UNDER SEAL UNDER**
**31 U.S.C. § 3730(b)(2)**
**DO NOT POST ON ECF**
**DO NOT PUT IN PRESS BOX**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DANIEL FOSTER,<br><br>Plaintiff,<br><br>v.<br><br>IDT BIOLOGIKA CORPORATION, a Maryland corporation,<br><br>Defendant | No.: LKG 26 CV 00077<br><br>**FALSE CLAIMS ACT COMPLAINT** and **JURY DEMAND**<br><br>**[FILED UNDER SEAL]** |

**FALSE CLAIMS ACT COMPLAINT**

Daniel Foster ("Relator") brings this action as a *qui tam* relator on behalf of the United States against IDT Biologika Corporation ("Defendant" or "IDT") pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729-33, to recover damages, penalties, attorney fees and costs, and other relief.

**Introduction**

1. On January 23, 2021, Defendant IDT, the United States subsidiary of a German biologics company group, received approval for a second draw Paycheck Protection Program ("PPP") loan in the amount of $1,801,395.00 through First National Bank of Pennsylvania (loan number 4803478309). At the time of the loan, IDT and its affiliates around the world had over 2,000 employees — far greater than the maximum of 300 allowed for a second draw PPP borrower and its affiliates. On its second draw PPP loan application, however, IDT fraudulently represented that it had just 91 employees. Contrary to the clear requirements of applicable law and the PPP loan application, IDT's second draw PPP loan application failed to disclose the employees of the company's affiliates.

2. Had IDT been candid about its parent company's employees on its second draw PPP loan application, IDT never would have received a second draw PPP loan and United States taxpayers would have saved approximately $1,871,898.85 in forgiven loan proceeds and lender processing fees.

3. Relator is an original source of the complaint allegations. Prior to the filing of this Complaint, Relator voluntarily made substantive disclosures to the government of facts and evidence underlying the allegations in this Complaint.

4. This action is filed under seal pursuant to the requirements of the False Claims Act, 31 U.S.C. § 3730(b)(2).

## Jurisdiction and Venue

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 31 U.S.C. § 3732, which confers jurisdiction over actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

6. This Court may exercise personal jurisdiction over IDT Biologika Corporation (IDT), and venue is appropriate in this Court, under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b)(2), because IDT resides in this District and transacts business in this District.

## The Parties

7. Relator is a dual citizen of the United States and Germany. He currently has a primary residence in Berlin, Germany. Relator first became aware of the issue of PPP fraud when he discovered that an organization with which he was affiliated had obtained PPP funds improperly. Sensing a larger problem, Relator began to use his digital investigative skills to identify other instances of apparent PPP fraud, including IDT's fraud.

8. Relator holds a certificate in forensic accounting and fraud examination as well as a specialization certificate in digital forensics. Relator speaks German and holds a B2 language certificate from the Goethe Institut.

9. IDT Biologika Corporation is a Maryland corporation with a principal place of business at 1405 Research Blvd., Rockville, Maryland 20850.

10. Relator discovered information about IDT's ultimate ownership and its true number of affiliated employees through the German-language financial statements of its parent companies, IDT Biologika GmbH and Klocke Holding GmbH.

## Background on IDT and its Affiliates

11. IDT Biologika Corporation is a biologics development and manufacturing company based in Rockville, Maryland.

12. IDT is a direct subsidiary of IDT Biologika GmbH in Dessau-Roßlau, Germany.

13. Klocke Holding GmbH ("Klocke Holding") is the mother company of the Klocke-Gruppe, a medium-sized science and technology group based in Weingarten, Germany. According to Klocke Holding's 2021 annual report, it indirectly owns 100% of IDT Biologika Corporation through IDT Biologika GmbH. This ownership structure is depicted in the following diagram:




14. In addition to its ownership of IDT, Klocke Holding directly or indirectly holds a majority interest in the following other subsidiaries:

| **Company Name** | **Ownership (%)** |
|---|---|
| Klocke Verpackungs-Service GmbH, Weingarten, Germany | 100% |
| Klocke Pharma-Service GmbH, Weingarten, Germany | 100% |
| IDT Biologika GmbH, Dessau-Roßlau, Germany | 94% |
| TEW - Technik-Energie-Wasser-Servicegesellschaft mbH, Dessau-Roßlau, Germany | 94% |
| Klocke Verwaltungs-GmbH, Weingarten, Germany | 94% |
| Klocke France EURL, Strasbourg, France | 100% |
| PIH Pharma Industry Holding GmbH, Weingarten, Germany | 100% |
| IDT Schade Brauerei Entwicklungs GmbH & Co. KG, Dessau-Roßlau, Germany | 100% (via IDT Biologika GmbH) |
| IDT Schade Brauerei Verwaltungs GmbH, Dessau-Roßlau, Germany | 100% (via IDT Biologika GmbH) |
| Schade Brauerei Entwicklungs GmbH & Co. KG, Dessau-Roßlau, Germany | 100% (via IDT Biologika GmbH) |
| Schade Brauerei Verwaltungs GmbH, Dessau-Roßlau, Germany | 100% (via IDT Biologika GmbH) |
| IDT Biologika Corporation, Rockville, USA | 100% (via IDT Biologika GmbH) |

15. In the 2021 fiscal year, Klocke Holding had a headcount of 2,502 workers ("Beschäftigte" or "Arbeitnehmer"). In 2020 ("im Vorjahr"), Klocke Holding had 2,203 employees. According to Klocke Holding, most of these employees were located in Germany.

**Legal Background**

**A. The False Claims Act**

16. The False Claims Act provides, in pertinent part, that any person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . .
>
> * * *
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–410 [1]), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).

17. For purposes of the False Claims Act, "the terms 'knowing' and 'knowingly' mean that a person, with respect to information[,] (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). No proof of specific intent to defraud is required. 31 U.S.C. § 3729(b)(1)(B).

**B. The Paycheck Protection Program**

18. In March 2020, through the CARES Act, Pub. Law 116–136, Congress established the PPP to provide economic relief for small businesses during the coronavirus pandemic.

19. Under the first round of the PPP, an eligible business could apply for a loan of up to 2.5 times its average monthly payroll during 2019, subject to a maximum amount of $10 million. *See* 15 U.S.C. § 636(a)(36)(E); *see also* Small Business Administration ("SBA") Form 2483, Instructions.

20. An applicant for a first draw PPP loan could qualify as an eligible business under any of three standards:

> (1) having an average of no more than 500 employees during 2019 or during the 12 months prior to applying for a first draw PPP loan, *see* 15 U.S.C. § 636(a)(36)(D)(i)(I) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 14 (April 6, 2020);
>
> (2) the SBA employee-based or revenue-based size standard corresponding to the business's primary industry, *see* 15 U.S.C. § 636(a)(36)(D)(i)(II) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 2; or
>
> (3) the SBA's alternative size standard, which provided that the business must have (a) a maximum tangible net worth of not more than $15 million, *and* (b) average net income after tax of not more than $5 million for the business's two full preceding fiscal years as of March 27, 2020, *see* 86 Fed. Reg. 15083, 15085 n.5 (Mar. 22, 2021) *and* SBA, *PPP Loans Frequently Asked Questions*, Question 2.

21. Under each of these eligibility standards, the law required the business to include its affiliates in assessing whether the business met the standard. *See* 15 U.S.C. § 636(a)(36)(D)(iv). The affiliation rule in effect at the time, 13 C.F.R. § 121.301(f) (2019) (*available at* 81 Fed. Reg. 41423, 41428 (June 27, 2016)), provided that "[c]oncerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both." The rule further elaborated that affiliation could arise under various circumstances, including:

> Affiliation based on ownership. For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to

> be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders.
>
> Affiliation based on management. Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one o[r] more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.

*Id.*; *see also* SBA, *Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program* (April 3, 2020).

22. Notably, when the PPP first came into effect, SBA issued guidance that "[y]ou are eligible for a PPP loan if you have 500 or fewer employees whose principal place of residence is *in the United States*." 85 Fed. Reg. 20811, 20812 (April 15, 2020) (emphasis added). On May 5, 2020, however, SBA clarified that a PPP "applicant must count all of its employees and the employees of its U.S. *and foreign affiliates*." 85 Fed. Reg. 30835, 30836 (May 21, 2020).

23. In December 2020, Congress enacted the Economic Aid to Hard Hit Small Businesses, Nonprofits, and Venues Act, Pub. Law 116-260, Div. N, Tit. III, which, among other things, provided for eligible small businesses to obtain a second draw PPP loan. An eligible business could apply for a second draw PPP loan of up to 2.5 times its average monthly payroll during 2019 or 2020. 15 U.S.C. § 636(a)(37)(C); *see also* SBA Form 2483-SD, Instructions. An applicant for a second draw PPP loan could qualify as an eligible small business if (1) it had no more than 300 employees on average during the 12 months preceding its loan application or during the period it used to calculate average monthly payroll; and (2) its revenue during any quarter of 2020 was at least 25 percent lower than in the corresponding quarter in 2019. 15 U.S.C. § 636(a)(37)(A)(iv); *see also* SBA Form 2483-SD, Instructions. For purposes of

determining an applicant's number of employees, the original PPP affiliation rules applied. 15 U.S.C. § 636(a)(37)(E).

24. To apply for a second draw PPP loan, a business would submit SBA Form 2483-SD to an authorized lender. This form required a potential borrower to specify its North American Industry Classification System code, the number of employees, and whether "the Applicant or any owner of the Applicant [is] an owner of any other business, or have common management (including a management agreement) with any other business." On the second draw PPP loan application form, the box for "Number of Employees" specifically said "including affiliates." The second draw application form also required the applicant to certify, among other things, that:

- "[t]he Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted,"
- "[t]he Applicant, together with its affiliates . . . employs no more than 300 employees," and
- "[t]he Applicant is not engaged in any activity that is illegal under federal, state or local law."

25. The statutes creating the PPP program provided that SBA would reimburse PPP lenders for processing at specified rates. As relevant here, the rate for second draw loans of more than $350,000 was 3 percent. *See* 15 U.S.C. § 636(a)(37)(L)(ii)(II).

26. The PPP also provided for full forgiveness of a loan so long as the borrower used the loan proceeds in accordance with the PPP rules and did not reduce the number of its employees. *See* 15 U.S.C. § 636m; SBA, *Frequently Asked Questions (FAQs) on PPP Loan Forgiveness* (Oct. 13, 2020). To the extent a borrower reduced the average number of its employees in the months after receiving the loan, the PPP created a formula for reducing the loan forgiveness amount accordingly. *See* 15 U.S.C. § 636m(d)(2).

**<u>IDT's Second-Draw PPP Loan</u>**

27. On January 23, 2021, IDT was approved for a second-draw PPP loan of $1,801,395.00 through First National Bank of Pennsylvania (loan number 4803478309).

28. The second-draw loan application instructed companies to list their total number of employees, including affiliates.

| | | | | | |
|---|---|---|---|---|---|
| **Average Monthly Payroll:** | $ | **x 2.5 (or x 3.5 for NAICS 72 applicants) equals Loan Request Amount (may not exceed $2,000,000):** | $ | **Number of Employees (including affiliates, if applicable; may not exceed 300 unless "per location" exception applies):** | |
| **Purpose of the loan (select all that apply):** | ☐Payroll Costs | ☐Rent / Mortgage Interest | ☐Utilities | ☐Covered Operations Expenditures | |
| | ☐Covered Property Damage | ☐Covered Supplier Costs | ☐Covered Worker Protection Expenditures | ☐Other (explain): | |
| **PPP First Draw SBA Loan Number:** | | | | | |

29. When submitting its second-draw application (Form 2483-SD), IDT made the following good faith certification regarding its headcount (emphasis added):

> *The Applicant, **together with its affiliates** (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees; (2) **employs no more than 300 employees**; or (3) if NAICS 72, employs no more than 300 employees per physical location; (4) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business or a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, employs no more than 300 employees per location.*

30. IDT listed 91 employees on its second-draw application, including affiliates. This was a material misrepresentation because, together with its affiliates, its headcount exceeded 2,000 employees.

31. IDT listed its address as 1405 Research Blvd., Rockville, MD 20850-3108, and classified itself under NAICS code 325414 (Biological Product (except Diagnostic) Manufacturing).

32. On January 3, 2022, IDT applied for loan forgiveness. The SBA granted forgiveness of $1,817,857.00 on February 19, 2022. The SBA also paid First National Bank of Pennsylvania a lender processing fee of $54,041.85 in connection with the loan.

33. Including loan forgiveness and the lender processing fee, the total loss to the government stands at approximately $1,871,898.85.

**Fraud Allegations**

34. IDT did not qualify for the second-draw PPP loan it received, because it employed more than 300 people. As noted above, IDT's actual headcount, together with its affiliates, exceeded 2,000 employees.

35. When IDT applied for its second draw PPP loan, it, IDT Biologika GmbH, and Klocke Holding GmbH were affiliates because, as alleged above, IDT was a subsidiary of IDT Biologika GmbH and Klocke Holding GmbH.

36. IDT did not report the true number of employees of all its affiliates, including its parent company and affiliates in Germany, on its second-draw PPP loan application, even though the application and the governing rules clearly required second-draw PPP loan applicants to include the employees of all their affiliates, domestic and foreign.

**COUNT I**
**False Claims Act, 31 U.S.C. § 3729(a)(1)(A)**

37. Relator re-alleges and incorporates by reference all paragraphs of this complaint set out above as if fully set forth herein.

38. Through the acts set forth above, IDT knowingly presented, or caused to be presented, false or fraudulent claims for payment to SBA for its second-draw PPP loan and loan forgiveness to which it was not entitled.

39. By virtue of the false or fraudulent claims that IDT knowingly made or presented, or caused to be made or presented, IDT violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), and the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## COUNT II
## False Claims Act, 31 U.S.C. § 3729(a)(1)(B)

40. Relator re-alleges and incorporates by reference all paragraphs of this complaint set out above as if fully set forth herein.

41. Through the acts set forth above, IDT knowingly made, used, or caused to be made and used, false records and statements material to the payment of false or fraudulent claims by SBA for its second draw PPP loan and loan forgiveness to which it was not entitled.

42. By virtue of the false records and statements IDT made, used, or caused to be made or used, IDT violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(B), and the United States has suffered actual damages and is entitled to recover treble damages plus a civil monetary penalty for each false claim.

## Prayer for Relief

a. A judgment against Defendant in an amount equal to all damages due to the Government, including treble damages, under the FCA;

b. A judgment against Defendant for all civil penalties due to the Government for Defendant's violations of the FCA;

c. That Relator recover from Defendant all costs of this action, with interest, including the cost to the Government for its expenses related to this action;

d. That Relator recover from Defendant all reasonable attorneys' fees in bringing this action;

e. That Relator be awarded the maximum amount of the proceeds of this action as allowed under 31 U.S.C. § 3730, and/or any other applicable provision of law;

f. That a trial by jury be held on all issues so triable;

g. An award of pre- and post-judgment interest; and

h. Such other and further relief to Relator and/or the United States of America as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

DATED this 7th day of January, 2026

Veronica Nannis

(Signed by Virginia Grimm #22037 with permission)

Veronica Nannis (Bar# 15679)
Jay P. Holland (Bar# 422258)
Joseph Greenwald & Laake PA
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Ph: 301-220-2200
vnannis@jgllaw.com
jholland@jgllaw.com

Stephen Teller

(Signed by Virginia Grimm #22037 with permission)

Stephen A. Teller, WSBA #23372*
Teller Law
300 Lenora St. #1471
Seattle, WA 98121
(206) 324-8969
steve@stellerlaw.com
*Attorney for Plaintiff/Relator*
*pro hac vice forthcoming